**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NEHEMIAH MANUFACTURING COMPANY LLC, | ) ) ) |
| | ) Civil Case No. |
| Plaintiff, | ) |
| | ) Judge |
| v. | ) |
| | ) **VERIFIED COMPLAINT FOR** |
| BH SUPER DEALS INC., JADE TRADING CORP., and RECYCLING GROUP, LTD., | ) **TEMPORARY RESTRAINING ORDER,** ) **PRELIMINARY INJUNCTION,** ) **PERMANENT INJUNCTION, AND** |
| | ) **MONETARY AND OTHER RELIEF** |
| Defendants. | ) **AND DEMAND FOR JURY TRIAL** |
| | ) |
| | ) |

Plaintiff Nehemiah Manufacturing Company LLC ("Nehemiah"), by and through counsel, brings this Verified Complaint for Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, and Monetary and Other Relief, and in support thereof states the following:

## INTRODUCTION

1.     This is an action to interdict the unlawful sale of defective and unmerchantable Tide® Washing Machine Cleaner ("TWMC").  The company charged with destroying the TWMC, Defendant Recycling Group Limited ("RGL"), instead illicitly sold the product to multiple entities in New Jersey who have resold it to unsuspecting consumers via third party sales channels on Amazon and Walmart.com.

2.     Despite Nehemiah's best efforts to stop the unauthorized sale of diverted TWMC product – including cease and desist letters, intervention from Amazon and Walmart, a limited action for pre-suit discovery in Ohio, and other forms of overt outreach – sales have continued

1

unabated, often through e-commerce storefronts that change names every few weeks.  This action represents Nehemiah's last and final attempt to restrain further unauthorized sales of TWMC.

3.      Nehemiah designs, manufactures, and markets consumer packaged goods from its headquarters in Cincinnati, Ohio.  Nehemiah is a Certified B Corporation, a private accreditation awarded to companies that demonstrate high social and environmental performance.  Nehemiah prides itself as a "second chance employer."  Its workforce largely hails from inner city Cincinnati and comes to Nehemiah with little or spotty work histories.

4.      Nehemiah's mission has resulted in partnerships with several large consumer goods manufacturers.  Procter & Gamble ("P&G") licenses several product lines within its portfolio to Nehemiah, including Downy® and Febreze®.  Nehemiah manufactures and sells TWMC under an exclusive licensing agreement with P&G.

5.      Nehemiah subcontracts some TWMC manufacturing to Korex Corporation ("Korex") in Wixom, Michigan.  After Korex accumulated 92 tons of unsalable TWMC due to packaging issues, Nehemiah directed Korex to hire RGL to destroy the defective product.

6.      Rather than place the product in a landfill, RGL sold the TWMC to certain individuals or entities associated with Defendants BH Super Deals Incorporated ("BH Super Deals") and Jade Trading Corporation ("Jade Trading").  Both companies were incorporated within the last eight months in New York and operate out of the same warehouse in Eatontown, New Jersey.  Through a series of fictitious business names, BH Super Deals and Jade Trading have marketed and continue to sell unmerchantable TWMC into the stream of commerce, causing significant damage to Nehemiah.

7.      Nehemiah files this lawsuit to enjoin the Defendants' wrongful conduct and to recover all damages that Nehemiah has incurred because of the Defendants' wrongful scheme.  In

doing so, Nehemiah seeks a temporary restraining order, a preliminary and permanent injunction, expedited discovery, and monetary damages to redress this unauthorized trafficking in unsalable merchandise.

## PARTIES

8.     Plaintiff Nehemiah Manufacturing Company LLC is an Ohio limited liability company with its principal place of business located at 1907 South Street, Cincinnati, Ohio 45204.

9.     Defendant BH Super Deals Incorporated is a New York corporation with its principal place of business located at 541 Industrial Way West, Suite A, Eatontown, New Jersey 07724.

10.     Defendant Jade Trading Corporation is a New York corporation with its principal place of business purportedly located at 541 Industrial Way West, Suite B (Upstairs), Eatontown, New Jersey 07724.   Nehemiah's investigation and public-facing signage evidence that Jade Trading operates out of Suite A.

11.     Defendant Recycling Group Limited is an Ohio corporation with its principal place of business located at 630 Shepherd Drive, Cincinnati, Ohio 45215.

## JURISDICTION AND VENUE

12.     This Court has original jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1338, with reference to 15 U.S.C. § 1125(a), 15 U.S.C. § 1114(1), and 15 U.S.C. § 1116. This Court has supplemental jurisdiction over Plaintiff's common law claims pursuant to 28 U.S.C. § 1367(a).

13.     Personal jurisdiction is proper as BH Super Deals and Jade Trading are residents of New Jersey and RGL purposely availed itself of the privilege of conducting business activities in

the state by selling the defective TWMC to one or both of BH Super Deals, Jade Trading, or individuals and entities associated with them.

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL BACKGROUND

15.     Over the course of 2022, Korex – a Nehemiah subcontractor that makes TWMC – accumulated 92 tons (166 pallets) of unsalable TWMC sachets and bulk detergent powder, largely due to packaging that was underfilled, overfilled, and/or leaking and did not meet Nehemiah's quality standards.  In consultation with Nehemiah, Korex reached out to RGL to inquire about disposal of the defective TWMC.

16.     In a conversation between Korex and RGL on or about September 12, 2022, RGL's owner, Michael Story, informed Korex that RGL would haul away the defective TWMC without charge if Korex and Nehemiah allowed RGL to take title to the product and recycle it.  If Korex and Nehemiah wanted the product destroyed, however, RGL would charge a flat rate of $200 / ton to cover shipping and destruction costs.

17.     At no point did RGL inform Korex that it would recycle or dispose of the TWMC product by selling it to a third party for further sale to consumers.  Doing so constitutes product diversion, a rare but known problem within the recycling industry.

18.     Korex agreed with RGL to destroy the product.  By e-mail on October 13, 2022, RGL quoted Korex for the removal and disposal of an estimated 154 tons of defective TWMC at a reduced cost of $115.50 / ton, totaling $17,787.00.  Korex accepted the quote and issued a corresponding purchase order for $17,787.00 on or about October 26, 2022.

19.     On October 19, 2022, RGL requested a 2 lb. sample of the powder by overnight delivery, which Korex supplied.  Nehemiah now believes that RGL did not intend to supply the

4

sample to a waste management company performing destruction of the product; rather, RGL provided the sample to an interested third-party buyer.

20.     Between October 31, 2022 and November 9, 2022, RGL, through a third-party carrier, collected eight truckloads totaling 92 tons of defective TWMC sachets and super sacks of detergent powder from Korex.

## THE DIVERSION SCHEME

21.     Unbeknownst to Korex and Nehemiah, the carrier did not deliver the defective products to RGL.  Rather, RGL instructed the carrier to bring the loads to the carrier's warehouse in Southeastern Indiana for temporary storage.

22.     Nehemiah now knows based on receipt of bills of lading from the carrier – Robco Transportation Corp. ("Robco") of Lawrenceburg, Indiana – that the loads were picked up from Robco's warehouse between November 3 and November 22, 2022 and transported to a "Lydia Foods" located at 541 Industrial Way West, Eatontown, New Jersey 07724.

23.     Per a search of the New Jersey Department of the Treasury website, there is no company registered to do business in New Jersey under the name Lydia Foods.

24.     In or about mid-November 2022, Nehemiah discovered that various third-party sellers were marketing loose sachets of TWMC (which are typically sold in boxes of three, five, seven, or twenty-one sachets) to customers on Amazon and Walmart.com.

25.     Nehemiah alerted Korex about the potential diverted product.  Korex contacted RGL, which in turn provided a "Certificate of Recycling or Destruction / Material Received from Korex Corporation" signed by Michael Story and attesting that all eight truckloads had been "disposed of per agreement" as of November 17, 2022.

26.    Separately, Nehemiah – which had previously used RGL to recycle or destroy its manufacturing waste – asked Mr. Story to provide certificates of destruction from RGL's subcontractor.  Via text message on November 21, 2022, Mr. Story sent images of two certificates to Nehemiah purportedly from Bavarian Waste Services ("Bavarian"), a waste management company based in Walton, Kentucky.  The images show a document detailing Bavarian's disposal of some unspecified amount of "laundry detergent powder / packets" on November 17, 2022.

27.    Nehemiah then followed up with Mr. Story to obtain the balance of the Bavarian certificates.  In a series of texts between November 21 and December 13, 2022, Mr. Story continually evaded Nehemiah's requests for additional information and evidence of destruction.

28.    At the same time, Nehemiah purchased TWMC from multiple Amazon and Walmart.com sellers and determined through lot codes and manufacturing dates that the TWMC came from the same production runs that were provided to RGL for destruction.

29.    In late December 2022, Nehemiah received certificates directly from Bavarian that showed Bavarian disposed of 45 tons of unidentified laundry detergent powder provided to it by RGL.  Nehemiah assumed this was the TWMC product but could not confirm or account for the balance of the 92 tons.

30.    Nehemiah immediately approached RGL with its findings.  Despite repeated phone calls, e-mails, and a demand letter from outside counsel, RGL refused to provide Nehemiah (and Korex) with any information concerning the ultimate disposition of the TWMC product.  Mr. Story told Nehemiah in his last communication with the company that he would not disclose any information unless compelled to do so by legal process.

31.    Similarly, Robco, the carrier hired by RGL, declined to provide information as to the ultimate destination of the trucks that left Korex with the defective TWMC.  Robco told

Nehemiah that it would only disclose such information with RGL's permission or through subpoena. RGL refused to allow Robco to provide the information.

32.    Having exhausted its attempts to obtain information voluntarily from RGL and Robco, Nehemiah filed a petition and action for discovery in the Court of Common Pleas in Hamilton County, Ohio on January 17, 2023. *See* Pet., *Nehemiah Mfg. Co. LLC v. Recycling Grp., Ltd., Robinson & Sons Trucking Inc.*, Case No. A2300217 (Com. Pls. Ct. Ohio Jan. 17, 2023) (hereafter, the "Ohio Petition"). The Ohio Petition is a limited action pursuant to Ohio law that allows a plaintiff to conduct discovery to ascertain the identity of unknown defendants.

33.    In response to the Ohio Petition, Robco produced bills of lading to Nehemiah on February 20, 2023 showing that all 92 tons of defective TWMC were not sent to RGL or Bavarian, but instead diverted to a "Lydia Foods" in Eatontown, New Jersey. Accordingly, the certificates of disposal from Bavarian were either falsified or pertain to other destroyed products and were passed off by RGL as false evidence of the TWMC product's destruction.

34.    Separately, RGL moved to dismiss the petition on February 21, 2023 and refused to provide documents identifying the third parties to which RGL sold and/or transferred the TWMC product. The Ohio Petition proceeding is still ongoing.

## UNAUTHORIZED SALES OF DIVERTED PRODUCT FROM NEW JERSEY

35.    While pursuing the Ohio Petition and its subsequent briefing, Nehemiah continued to seek information regarding the identity of potential middlemen and sellers of the diverted TWMC. Through its efforts, Nehemiah learned that the address for Lydia Foods – 541 Industrial Way West, Eatontown, New Jersey – is the address used by multiple sellers of TWMC on Amazon.

36.    Nehemiah has identified a host of unauthorized sellers using a string of fictitious business names on Amazon and Walmart.com to pass off defective TWMC as merchantable product at a price at or below MSRP, including:

    a.    BH Super Deals, 541 Industrial Way West, Suite A10, Eatontown, NJ 07724;

    b.    Pharmapack, 541 Industrial Way West, Suite AA, Eatontown, NJ 07724;

    c.    Warbie Gallery, 539 Industrial Way West, Eatontown, NJ 07724 (this address does not exist);

    d.    Good Living USA, 2 Alpine Court, Suite 100, Spring Valley, NY 10977;

    e.    Shop Two, Suite 362, 1026 Broad Street, Shrewsbury, NJ 07702 (this address corresponds to a strip mall; Suite 362 does not appear to exist);

    f.    Warbies Deals, 115 Canvasback Rd, Suite D2, Sheridan, WY 82801 (this seller does not appear to operate out of Wyoming);

    g.    Stickening; and

    h.    bookshop2.

37.    Some of these fictitious names spoof those of larger third-party sellers on Amazon (e.g., Pharmapack and Warbies Deals).  The TWMC products pages on Amazon and Walmart.com are indistinguishable from the authorized (Nehemiah) pages, save for the name of the individual seller.

38.    Nehemiah markets TWMC in boxes ranging from three to twenty-one sachets. Customers purchasing from the above-listed sellers receive loose sachets in a padded (and often outwardly dirty) mailer.  The sachets themselves are usually covered in powder, evidence of packaging problems that led Nehemiah and Korex to classify the sachets as defective.  The sachets

are also generally between 4 and 30 percent below the lowest allowable weight for an individual

sachet.  Some customers have received empty sachets.

39.    Unsurprisingly, customers purchasing the diverted TWMC on Amazon have left

reviews complaining about the product:



40.    One recipient of defective TWMC called Nehemiah in December 2022 out of

concern that "someone was messing around with the product" and told the company that "she was

afraid to use" it. The negative feedback has continued unabated:



41.    Nehemiah estimates that the unauthorized sellers received individual sachets with a retail value of up to USD $2 million, assuming the sachets were not defective.  Given their defective nature, the sachets are unsalable.

### BH SUPER DEALS AND JADE TRADING KNOWINGLY ENGAGE IN UNAUTHORIZED SALES OF DEFECTIVE MERCHANDISE

42.    As part of its investigation, Nehemiah has identified the sellers of the defective TWMC as two entities operating out of the same storefront – 541 Industrial Way West, Suite A, Eatontown, New Jersey 07224.

43.    Per its property manager, 541 Industrial Way West is a "109,680 square foot multi-tenanted office/industrial building" with loading docks on two sides of the building. (*See* https://denholtz.com/property/541-industrial-way-west-eatontown-nj-2/, last accessed March 11,

2023.)  Upon information and belief, Suite A is the largest unit in the building, covering around

50,000 square feet of warehouse space.

      44.     Upon information and belief, Defendant Jade Trading moved into Suite A at some

point in Q4 2022.  Signage on the outside of the building identifies Jade Trading as the occupant

of Suite A.



      45.     Jade Trading was incorporated in the State of New York on July 24, 2022.  In

contravention of New York Department of State regulations, no names of individuals appear as

incorporator or filer on Jade Trading's certificate of incorporation.  Jade Trading is not registered

to do business in the State of New Jersey.

      46.     Upon information and belief, Jade Trading runs an e-commerce business out of

Suite A, with multiple tractor-trailers and shuttle vans making deliveries and picking up packages

throughout the day.

      47.     BH Super Deals was incorporated in the State of New York on October 31, 2022 –

just days after Korex contracted with RGL to destroy the TWMC product.  In contravention of

New York Department of State regulations, no names of individuals appear as incorporator or filer

on BH Super Deal's certificate of incorporation.  BH Super Deals is not registered to do business in the State of New Jersey.

48.    BH Super Deals' certificate of incorporation lists its address as Suite A10.  Suite A10 does not appear to exist as a standalone suite, meaning Jade Trading and BH Super Deals occupy the same warehouse space at 541 Industrial Way West.

49.    BH Super Deals operates a storefront on Amazon listing its address as Suite A10. BH Super Deals' seller description falsely identifies it as a small-scale individual seller located in the Midwestern United States: "I ship from the Kansas City area. I specialize in difficult to find movies and TV shows.  I teach math and social studies at the high school and middle school levels."

50.    Until recently, BH Super Deals offered defective TWMC for sale to consumers via its Amazon storefront.  Nehemiah received the below-pictured dirty cardboard box from BH Super Deals containing defective TWMC.  Powder is visible on the outside of the sachets, all of which are underfilled:




 

51.    By contrast, TWMC is sold in packaging or boxes of three, five, seven, or twenty-one sachets:



52.      BH Super Deals and Jade Trading may be owned and operated by at least two individuals – Loura Saideh and Ari Cameo.  A vehicle belonging to Ms. Saideh was observed coming and going from 541 Industrial Way West in late February 2023.  Ms. Saideh is a resident of Kings County, New York, which both BH Super Deals and Jade Trading identify as their counties of incorporation. Mr. Cameo registered a Florida limited liability company called BH Trio Home Group LLC on December 28, 2022.  Two months earlier, Mr. Cameo registered a separate Florida corporation, Trio Home Group Inc., on November 2, 2022, just two days after BH Super Deals' incorporation.  Ms. Saideh serves as President and Mr. Cameo is Vice President of Trio Home Group Inc.

53.      Due to the use of fictitious business names and refusal of any of the Defendants to cooperate, Nehemiah only recently identified BH Super Deals and Jade Trading as the culpable parties following Robco's disclosure that all 92 tons of defective TWMC was diverted to 541 Industrial Way West.  Further attempts to restrain the unauthorized sale of defective TWMC, including demand letters and direct messages to BH Super Deals via discrete Amazon seller channels, have gone unanswered.  Amazon has succeeded in shutting down some storefronts offering defective TWMC for sale, but new ones appear within days offering the same defective product, typically well below MSRP, cutting into sales of legitimate TWMC.

54.      Nehemiah has confirmed that a new seller, Quality Wholesale Group Corporation ("Quality"), appeared on Amazon and Walmart.com within the last week selling defective TWMC.  Quality's address – 2307 Avenue X, *Suite BH*, Brooklyn, New York 11235 (emphasis added) – implies that it is affiliated with BH Super Deals.  Quality was incorporated in the State of New York on April 11, 2022.  Upon information and belief, its principal place of business in Brooklyn is a personal residence owned by members of the Cameo family.

**CAUSES OF ACTION**

**COUNT 1: FALSE DESIGNATION OF ORIGIN, PASSING OFF, FALSE OR
MISLEADING DESCRIPTION OR REPRESENTATION OF FACT, AND UNFAIR
COMPETITION UNDER THE LANHAM ACT (15 U.S.C. § 1125(a))
(ALL DEFENDANTS)**

55.     Nehemiah incorporates herein by reference all of the allegations set forth in the paragraphs above.

56.     Defendants, either by their sale of TWMC, by their control of one or more Defendants, or by their participation in the scheme to sell TWMC unlawfully, are directly, contributorily and/or vicariously liable for the acts complained of herein.

57.     Defendants' diversion and unauthorized sale of TWMC is and was without authorization by Nehemiah.  Such use constitutes a false designation of origin, passing off, and a false or misleading description or representation of fact, which is likely to cause confusion, mistake, or deception, constituting unfair competition.

58.     Defendants' actions have been and continue to be willful, intentional, deliberate and with full knowledge of the false designation of origin, passing off and false or misleading description or representation of fact.

59.     Defendants' actions constitute false designation of origin and passing off in connection with products distributed in interstate commerce in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1).

60.     Defendants' actions constitute false or misleading description or representation of fact and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a)(1).

61.     BH Super Deals and Jade Trading's actions, if not enjoined, will continue.

62.     Nehemiah has suffered and will continue to suffer immediate and irreparable injury as a result of the above alleged conduct.  An award of monetary damages alone cannot fully compensate Nehemiah for its injuries, and Nehemiah lacks an adequate remedy at law.

63.     As a direct and proximate result of Defendants' unlawful acts, Nehemiah has suffered and will continue to suffer damages in an amount to be determined at trial but in excess of $75,000.00.

64.     Defendants' foregoing acts have been and continue to be willful, intentional and deliberate, making this an exceptional case and entitling Nehemiah to attorneys' fees and damages in an amount three times greater than actual damages pursuant to the Lanham Act, 15 U.S.C. § 1117.

65.     Nehemiah is entitled to all other remedies available under the Lanham Act, including but not limited to compensatory damages, treble damages, disgorgement of Defendants' profits, costs, and attorneys' fees.

## COUNT 2: FALSE ADVERTISING
## UNDER THE LANHAM ACT (15 U.S.C. § 1125(a))
### (ALL DEFENDANTS)

66.     Nehemiah incorporates herein by reference all of the allegations set forth in the paragraphs above.

67.     Defendants, either by their diversion or sale of TWMC, by their control of one or more Defendants, or by their participation in the scheme to sell TWMC unlawfully, are directly, contributorily and/or vicariously liable for the acts complained of herein.

68.     Upon information and belief, Defendants made statements and representations to consumers and others that the defective TWMC that they sold was salable product.  Such statements and representations were untrue, deceptive, and misleading.

69.     Upon information and belief, such statements and representations were made by Defendants in interstate commerce, and/or otherwise appeared in commercial advertising or promotion by Defendants.

70.     Defendants made such statements and misrepresentations in connection with representations regarding products, services, and/or commercial activities offered by Defendants and/or the products, services, and/or commercial activities of Nehemiah.

71.     Defendants' false, misleading and deceptive statements and representations to consumers are material.

72.     Defendants' actions have been and continue to be willful, intentional, deliberate and with full knowledge of the falsity of their statements and representations to consumers.

73.     Defendants' actions constitute a violation of the Lanham Act, 15 U.S.C. § 1125(a).

74.     Nehemiah has suffered and will continue to suffer immediate and irreparable injury as a result of the above alleged conduct.  An award of monetary damages alone cannot fully compensate Nehemiah for its injuries, and Nehemiah lacks an adequate remedy at law.

75.     BH Super Deals and Jade Trading's actions, if not enjoined, will continue.

76.     As a direct and proximate result of Defendants' unlawful acts, Nehemiah has suffered and will continue to suffer damages in an amount to be determined at trial but in excess of $75,000.00.

77.     Defendants' foregoing acts have been and continue to be willful, intentional and deliberate, making this an exceptional case and entitling Nehemiah to attorneys' fees and damages in an amount three times greater than actual damages pursuant to the Lanham Act, 15 U.S.C. § 1117.

78.     Nehemiah is entitled to all other remedies available under the Lanham Act, including, but not limited to, compensatory damages, treble damages, disgorgement of Defendants' profits, costs, and attorneys' fees.

## COUNT 3: FRAUD
### (RGL)

79.     Nehemiah incorporates herein by reference all of the allegations set forth in the paragraphs above.

80.     Nehemiah directed Korex to provide 92 tons of unsalable TWMC to RGL for destruction at a cost of more than $17,000.

81.     Rather than dispose of the product, RGL, in concert with the remaining Defendants, diverted the product for sale into the stream of commerce.

82.     RGL provided certificates of disposal from Bavarian attesting that certain quantities of defective TWMC had been destroyed on certain dates.

83.     In fact, no such destruction occurred.

84.     RGL provided the certificates of disposal upon Nehemiah's request.  RGL knew that the certificates were untrue or did not pertain to the defective TWMC and were made with the intent to deceive Nehemiah.

85.     Nehemiah relied on RGL's representations.  Had Nehemiah known that its product would be diverted for resale, it would not have permitted the conveyance of TWMC to RGL.

86.     RGL knew that Defendants BH Super Deals and Jade Trading were not authorized sellers of TWMC.

87.     RGL knew that BH Super Deals and Jade Trading were selling product that was not intended for the market.

88.     Nehemiah has suffered damages as a direct and proximate result of RGL's conduct in an amount to be determined at trial but in excess of $75,000.00.

## COUNT 4: FRAUD UNDER N.J. REV. STAT. § 56:8-2
### (ALL DEFENDANTS)

89.     Nehemiah incorporates herein by reference all of the allegations set forth in the paragraphs above.

90.     By the above described knowing, intentional, and wrongful conduct, Defendants have engaged in unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation and knowing concealment of material fact in connection with the sale of merchandise, which conduct is proscribed by New Jersey Revised Statute § 56:8-2.

91.     BH Super Deals and Jade Trading's actions, if not enjoined, will continue.

92.     Nehemiah has suffered and will continue to suffer immediate and irreparable injury as a result of the above alleged conduct.  An award of monetary damages alone cannot fully compensate Nehemiah for its injuries, and Nehemiah lacks an adequate remedy at law.

93.     Nehemiah has suffered damages as a direct and proximate result of Defendants' acts in an amount to be determined at trial but in excess of $75,000.00.

## COUNT 5: UNFAIR COMPETITION
### (ALL DEFENDANTS)

94.     Nehemiah incorporates herein by reference all of the allegations set forth in the paragraphs above.

95.     By the above described knowing, intentional, and wrongful conduct, Defendants' acts constitute common law unfair competition.

96.     BH Super Deals and Jade Trading's actions, if not enjoined, will continue.

97.     Nehemiah has suffered and will continue to suffer immediate and irreparable injury as a result of the above alleged conduct.  An award of monetary damages alone cannot fully compensate Nehemiah for its injuries, and Nehemiah lacks an adequate remedy at law.

98.     Nehemiah has suffered damages as a direct and proximate result of Defendants' acts in an amount to be determined at trial but in excess of $75,000.00.

**COUNT 6: UNFAIR COMPETITION**
**UNDER NEW JERSEY REVISED STATUTE § 56:4-1**
**(ALL DEFENDANTS)**

99.     Nehemiah incorporates herein by reference all of the allegations set forth in the paragraphs above.

100.    By the above described knowing, intentional, and wrongful conduct, Defendants have engaged in the appropriation of reputation and goodwill of Nehemiah, which such conduct is proscribed by the New Jersey Revised Statute § 56:4-1.

101.    BH Super Deals and Jade Trading's actions, if not enjoined, will continue.

102.    Nehemiah has suffered and will continue to suffer immediate and irreparable injury as a result of the above alleged conduct.  An award of monetary damages alone cannot fully compensate Nehemiah for its injuries, and Nehemiah lacks an adequate remedy at law.

103.    Nehemiah has suffered damages as a direct and proximate result of Defendants' acts in an amount to be determined at trial but in excess of $75,000.00.

**COUNT 7: CIVIL CONSPIRACY**

104.    Nehemiah incorporates herein by reference all of the allegations set forth in the paragraphs above.

105.    Defendants RGL, BH Super Deals and Jade Trading, or at least two of them, in concert with the actions of others, including, but not limited to the other Defendants, have conspired to commit the foregoing acts, constituting civil conspiracy.

106.    BH Super Deals and Jade Trading's actions, if not enjoined, will continue.

107.    Nehemiah has suffered and will continue to suffer immediate and irreparable injury as a result of the above alleged conduct.  An award of monetary damages alone cannot fully compensate Nehemiah for its injuries, and Nehemiah lacks an adequate remedy at law.

108.    Nehemiah has suffered damages as a direct and proximate result of Defendants' acts in an amount to be determined at trial but in excess of $75,000.00.

**WHEREFORE**, Plaintiff Nehemiah Manufacturing Company LLC demands judgment against Defendants, jointly and severally, and respectfully requests:

A.    A temporary restraining order, preliminary injunction, and permanent injunction against Defendants BH Super Deals, Inc. and Jade Trading Corp. and their owners, directors, officers, employees, agents, representatives, licensees, affiliates, and any and all persons in active concert or participation with them, enjoining and restraining the unauthorized distribution and reselling of TWMC;

B.    A temporary restraining order, preliminary injunction, and permanent injunction against Defendants BH Super Deals, Inc. and Jade Trading Corp. and their owners, directors, officers, employees, agents, representatives, licensees, affiliates, and any and all persons in active concert or participation with them, enjoining and restraining them from representing, either directly or indirectly, or creating the impression that they are authorized distributors or resellers of TWMC;

C.    An accounting and disgorgement of the revenues and profits received by each Defendant relating to its or his/her diversion of or unauthorized sales of TWMC;

D.      An Order compelling Defendants to recall all unsalable TWMC at Defendants'
expense;

E.      An Order compelling Defendants to deliver to Nehemiah, at Defendants' expense,
all unsalable TWMC;

F.      An award of monetary damages against each Defendant, jointly and severally, for
the injuries sustained by Nehemiah as a result of Defendants' conduct alleged in Counts 1 through
7 and all other conduct alleged in this Verified Complaint;

G.      An award of treble damages against the Defendants for damages sustained by
Nehemiah as a result of the Defendants' passing off, false designation of origin and false or
misleading description or representation of fact, false advertising and unfair competition under the
Lanham Act, 15 U.S.C. § 1125;

H.      An award of costs and disbursements incurred in the prosecution of this action,
including reasonable attorneys' fees, as provided under common law and the Lanham Act, 15
U.S.C. § 1117;

I.      An award of punitive damages and exemplary damages; and
Such other and further relief as the Court deems just, proper, and appropriate.

Respectfully submitted,

/s/ Paul M. Bishop
Paul M. Bishop
MASON, GRIFFIN, & PIERSON, P.C.
101 Poor Farm Road
Princeton, New Jersey 08540
Phone: (609) 436-1210
Fax: (609) 683-7978
p.bishop@mgplaw.com

Aaron M. Bernay (*pro hac vice motion filed concurrently*)
Ariel M. Fox (*pro hac vice motion filed*

*concurrently*)
Bradford L. Higdon (*pro hac vice motion filed concurrently*)
FROST BROWN TODD LLP
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202
Phone: (513) 651-6800
Fax: (513) 651-6981
abernay@fbtlaw.com
afox@fbtlaw.com
bhigdon@fbtlaw.com

*Attorneys for Plaintiff Nehemiah Manufacturing Company LLC*

## <u>JURY DEMAND</u>

Plaintiff Nehemiah Manufacturing Company LLC hereby demands a trial by jury on all counts.

      /s/ Paul M. Bishop

Paul M. Bishop
MASON, GRIFFIN, & PIERSON, P.C.
101 Poor Farm Road
Princeton, New Jersey 08540
Phone: (609) 436-1210
Fax: (609) 683-7978
p.bishop@mgplaw.com

Aaron M. Bernay (*pro hac vice motion filed concurrently*)
Ariel M. Fox (*pro hac vice motion filed concurrently*)
Bradford L. Higdon (*pro hac vice motion filed concurrently*)
FROST BROWN TODD LLP
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202
Phone: (513) 651-6800
Fax: (513) 651-6981
abernay@fbtlaw.com
afox@fbtlaw.com
bhigdon@fbtlaw.com

*Attorneys for Plaintiff Nehemiah Manufacturing Company LLC*

## <u>CERTIFICATION PURSUANT TO LOCAL RULE 11.2</u>

I hereby certify that the matter in controversy is not the subject of any other action pending in another other Court or of a pending arbitration to the best of my knowledge and belief except *Nehemiah Mfg. Co. LLC v. Recycling Grp., Ltd., Robinson & Sons Trucking Inc.*, Case No. A2300217 (Com. Pls. Ct. Ohio Jan. 17, 2023) identified herein, a limited pre-suit discovery petition in Ohio state court.

    /s/ Paul M. Bishop

Paul M. Bishop
MASON, GRIFFIN, & PIERSON, P.C.
101 Poor Farm Road
Princeton, New Jersey 08540
Phone: (609) 436-1210
Fax: (609) 683-7978
p.bishop@mgplaw.com

Aaron M. Bernay (*pro hac vice motion filed concurrently*)
Ariel M. Fox (*pro hac vice motion filed concurrently*)
Bradford L. Higdon (*pro hac vice motion filed concurrently*)
FROST BROWN TODD LLP
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202
Phone: (513) 651-6800
Fax: (513) 651-6981
abernay@fbtlaw.com
afox@fbtlaw.com
bhigdon@fbtlaw.com

*Attorneys for Plaintiff Nehemiah Manufacturing Company LLC*

## **VERIFICATION**

Under penalty of perjury pursuant to 28 U.S.C. § 1746, I, Eric Wellinghoff, state that I am the Chief Marketing Officer for Nehemiah Manufacturing Company LLC ("Nehemiah"), the plaintiff in this action. I am authorized to act as an agent of Nehemiah for the purpose of verifying the Complaint. To the extent I have personal knowledge of the matters set forth in the Complaint, the information is true and accurate to the best of my knowledge and belief. As to any matters for which I do not have personal knowledge, I am authorized by Nehemiah to state that Nehemiah is informed and believes that the allegations in the Complaint are true and accurate to the best of its knowledge and belief.

_____

Eric Wellinghoff
Chief Marketing Officer
Nehemiah Manufacturing Company LLC

0128842.0767542  4866-7524-2326v6

26