**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **NEHEMIAH MANUFACTURING COMPANY LLC,** | Civil Action No. 23-1466 (ZNQ) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION** |
| **BH SUPER DEALS INC.,** *et al.*, | |
| Defendants. | |

**BONGIOVANNI, United States Magistrate Judge**

This matter comes before the Court upon Defendants BH Super Deals Inc. and Jade Trading Corp.'s (collectively "Defendants") motion seeking leave to amend their Counterclaim against Plaintiff Nehemiah Manufacturing Company LLC ("Plaintiff") and file a Third-Party Complaint against Procter and Gamble ("P&G"). (Docket Entry No. 70). Plaintiff opposes Defendants' motion with respect to Defendants' request to amend their Counterclaim. (Docket Entry No. 71). The Court has fully reviewed and considered all arguments made in support of, and in opposition to, Defendants' motion. The Court considers Defendants' motion without oral argument pursuant to L.Civ.R. 78.1(b). For the reasons set forth more fully below, Defendants' motion seeking leave to both amend their Counterclaim against Plaintiff and file a Third-Party Complaint against P&G is GRANTED.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

The factual background of this dispute is well known both to the parties and the Court. As such, it is not restated at length herein. Instead, it is summarized as follows: Plaintiff is a licensee of P&G for the purposes of the manufacturing and distribution of Tide Washing Machine Cleaner

("TWMC"). Plaintiff subcontracts some of the TWMC manufacturing to Korex Corporation ("Korex"). In 2022, Korex became aware that a large amount of TWMC fell short of salable standards. Plaintiff directed Korex to contract with a third-party to have the defective product destroyed. After title to the defective TWMC had been transferred, Plaintiff discovered the third-party contractor had redistributed, rather than destroyed, the TWMC. Through a series of transfers, Defendants came to be in possession of the TWMC and resold some of it online through webstore platforms like Amazon and Walmart.com before Plaintiff discovered the fate of the defective TWMC and petitioned this Court to enjoin Defendants from further sale of the product.

Plaintiff filed the instant action on March 15, 2023, against Defendants asserting claims under the Lanham Act of 1946 ("Lanham") 15 U.S.C. § 1125(a), alleging false designation of origin (Count I) and false advertising (Count II), under New Jersey Revised Statute § 56:8-2, alleging fraud (Count IV), and under New Jersey Revised Statute § 56:4-1 alleging unfair competition (Count VI) as well as civil conspiracy (Count VII) by Defendants. Plaintiff sought equitable and injunctive relief under Lanham § 1125(c)(1) and § 1117(a) and (b). (Docket Entry No. 1). Also on March 15, 2023, Plaintiff filed a motion for temporary restraining order and preliminary and permanent injunction, seeking to enjoin Defendants from further distribution and sale of TWMC, as well as the return of any TWMC in Defendants' possession to Plaintiff at Defendants' expense. (Docket Entry No. 2).

On March 16, 2023, the Court granted Plaintiff's motion for temporary restraining order ("TRO"), temporarily and preliminarily restraining Defendants from unauthorized distribution and resale of TWMC. (Docket Entry No. 9). On March 23, 2023, Defendants filed a response to Plaintiff's motion for temporary restraining order and preliminary injunction, in which Defendants did not oppose the injunction insofar as it restrained them from further resale of TWMC, but did

oppose the requirement for Defendants to cover the cost of its return. (Docket Entry No. 14). On June 23, 2023, Plaintiff filed a letter declaring the parties had agreed to split the cost of returning the TWMC. (Docket Entry No. 57).

On April 25, 2023, Defendants filed their Answer to Plaintiff's Complaint, denying the allegations in Counts I-VII of the Complaint, asserting affirmative defenses under Fed.R.Civ.P. ("Rule") 12(b)(6) and 19 based on Plaintiff's alleged failure to state a claim upon which relief may be granted and failure to join parties required to be joined, as well as a Counterclaim alleging negligence by Plaintiff. (Docket Entry No. 38).

On June 9, 2023, Plaintiff filed a motion to dismiss Defendants' Counterclaim. (Docket Entry No. 54). Plaintiff sought dismissal of Defendants' Counterclaim with prejudice based on the economic loss doctrine ("ELD"), which Plaintiff argued barred Defendants' claim for economic relief under tort law. (Docket Entry No. 54-1). On June 16, 2023, Defendants filed a brief in opposition to Plaintiff's motion to dismiss their Counterclaim, arguing that their negligence counterclaim was not barred by the ELD, because, without privity of contract between the parties, the Uniform Commercial Code ("U.C.C.") did not govern, and, thus, the ELD did not preclude their negligence counterclaim. (Docket Entry No. 56). On June 26, 2023, Plaintiff filed a reply to Defendants' opposition, asserting that Defendants' status as a commercial buyer of the TWMC was sufficient for the ELD to operate to bar their counterclaim under tort law. (Docket Entry No. 60).

On November 21, 2023, Defendants filed the pending motion, seeking to amend their Counterclaim to add facts regarding the nature of their acquisition of the TWMC from purchase to trade and to implead P&G as a third-party defendant. (Docket Entry No. 70). On December 1, 2023, Plaintiff filed a brief in opposition to Defendants' motion. (Docket Entry No. 71). On

December 5, 2023, Defendants filed a reply in further support of their request to amend their Counterclaim and file a Third-Party Complaint against P&G. (Docket Entry No. 72). On December 7, 2023, the District Court entered a Text Order administratively terminating Plaintiff's motion to dismiss Defendants' Counterclaim "so that the operative pleading can be identified." (Docket Entry No. 73). In so doing, the District Court noted that "[t]he administrative termination is without prejudice to Plaintiff's right to renew its dismissal arguments in a subsequent Motion to Dismiss." (*Id.*)

## II. THE PARTIES' ARGUMENTS

### A. Defendants' Motion to Amend their Counterclaim and File a Third-Party Complaint

As noted above, Defendants seek leave to file an Amended Counterclaim against Plaintiff and to file a Third-Party Complaint against P&G. (Decl. in Support of Mot. ¶ 1; Docket Entry No. 70-1). Defendants argue for a liberal standard of application of Fed. R. Civ. P. 15(a)(2), noting that "[t]he court should freely give leave [to amend] when justice so requires." (*Id.* ¶ 5.)

With respect to their request to amend, Defendants rely upon Rule 15(a)(2)'s liberal standard, noting that "'[t]he court should freely give leave [to amend] when justice so requires.'" (*Id.* (quoting Rule 15(a)(2)). Defendants contend that, under this standard, their request to amend should be granted because their request does not result from bad faith, would not result in undue delay or undue prejudice, and is not futile.

In this regard, Defendants argue that their motion to amend the Counterclaim is not made in bad faith, because their request is made for efficiency's sake, to "eliminate unnecessary motion practice" regarding standing, by establishing how Defendants have standing to assert their negligence counterclaim. (*Id.* ¶ 6). In addition, Defendants claim that there has been no undue delay in filing the motion to amend, because it was filed prior to a decision on Plaintiff's motion

4

to dismiss the Counterclaim. (*Id.*) Further, they assert that granting their motion to amend would result in no prejudice to Plaintiff, as their Amended Counterclaim replicates the cause of action set forth in their original Counterclaim, only amending the underlying facts, not the negligence claim. (*Id.*) The underlying facts Defendants seek to amend through the instant motion pertain to how they came to be in possession of the TWMC: rather than obtaining it by purchase, as originally contended, Defendants now claim "they obtained it by trading for another product for which they did pay. (*Id.* ¶3).

Finally, Defendants argue that their Amended Counterclaim would not be futile, though they offer no reasoning in their motion to amend, beyond asserting that when deciding a motion to dismiss, the "pleading is interpreted in [the] light most favorable to the non-movamt [sic]" and concluding that "if the allegations within the amended counterclaim and third-party complaint are taken as true with favor to the Moving Defendants, a valid claim is stated and the allegations may then move forward."[1] (*Id.* ¶ 6).

As to their proposed Third-Party Complaint, Defendants assert they should be permitted to implead P&G pursuant to Rule 14(a)(1), which "provides that 'a defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it.'" (*Id.* ¶ 7). Defendants argue that their proposed Third-Party Complaint against P&G is appropriate because P&G licenses the manufacture and distribution of TWMC to Plaintiff, and but for P&G's negligence in ensuring quality control standards are met, Defendants "would not have ended up with the nonconforming TWMC." (*Id.* ¶ 8).

---

[1] While Defendants fail to substantively discuss the ELD in their briefing on the motion to amend (Docket Entry No. 70), they did address same, specifically why they do not believe the ELD is a bar to their negligence Counterclaim, in their opposition to Plaintiff's motion to dismiss (Docket Entry No. 56).

### B. Plaintiff's Opposition

In opposition to the motion at issue, Plaintiff advances the following three arguments: that Defendants' proposed amendment is futile, was unduly delayed, and was submitted in bad faith. (Pl. Opp. at 1; Docket Entry No. 71). Plaintiff requests that the Court either deny the motion to amend or, alternatively, postpone judgment on the motion until after addressing their motion to dismiss. (*Id.*)

First, Plaintiff argues that the proposed amendment only makes underlying factual changes, which would not cure the error Plaintiff cites with respect to the original Counterclaim: that Defendants' recovery under tort law is barred by the ELD and therefore the proposed Amended Counterclaim would be equally futile as its original formulation. (*Id.* at 6). Plaintiff asserts that the "only basis for Unauthorized Sellers' amendment" is the factual shift as to how they came to possess the defective TWMC. (*Id.* at 5). Plaintiff argues that the legal basis of the proposed Amended Counterclaim, negligence, remains the same, and that the ELD bars recovery under a negligence theory when the claimant has allegedly suffered purely economic loss. (*Id.* at 6). Plaintiff also requests that, if the Court does grant Defendants' motion to amend, the damages of their Counterclaim be reduced to $29,280.00 from $240,000.00, because $29,280.00 reflects the amount paid by Rasmussen Books ("Rasmussen"), trading partner of Defendants, for the TWMC. As to the remaining $205,000.00, Plaintiff claims that same was paid by Bookshop Two – an entity Defendants' representative disclaimed association with in his deposition. (*Id.* at 7; Bishop Decl. Ex. D, 34; Bishop Decl. Ex. 1, 8).

Additionally, Plaintiff argues that Defendants' motion to amend is the product of undue delay, given that the Motion to Dismiss was introduced five months prior. (Pl. Opp. at 7). Plaintiff acknowledges that undue delay alone is an insufficient justification for denying leave to amend,

but contends that when the delay is considered in conjunction with Defendants' alleged bad faith and the futility of the amendment, it represents a sufficient basis on which to deny Defendants' request to amend. (*Id.*)

With respect to bad faith, Plaintiff points to the Assignment of Rights provided by Defendants as Exhibit A to their motion to amend. (*Id.* at 8). The Assignment of Rights represents evidence that Defendants offer of the trade executed between Defendants and Rasmussen to acquire the TWMC. The Assignment of Rights is signed by Ari Cameo, president of Rasmussen, and brother of David Cameo, executive representative of Defendants. Notably, David Cameo had previously denied his brother's involvement in Defendants' acquisition of the TWMC. (*Id.*; Bishop Decl. Ex. 1, 9). Plaintiff argues that Defendants "are now seeking to amend their Counterclaim based specifically on allegations . . . that contradict sworn testimony and defy this Court's order that 'Defendants must identify any entity involved in the [sale of the TWMC].'" (*Id.* (quoting Docket Entry No. 42). Plaintiff contends that this gamesmanship should not be rewarded and that "this type of bad faith presents the rare circumstance in which leave to amend must be denied." (*Id.*)

Despite the foregoing, if the Court does not deny Defendants' motion to amend based on futility, undue delay, or bad faith, Plaintiff argues that it should deny the motion without prejudice, or, at least, stay a decision on the motion to amend until a decision on Plaintiff's motion to dismiss has been made. (*Id.*) Plaintiff asserts no opposition to Defendants' motion to file a Third-Party Complaint against P&G. (*Id.* at 8, n.2).

### C. Defendants' Reply

In response Defendants focus on the liberal standard applied to motions to amend. Defendants assert that so long as the factual allegations contained within their proposed Amended

7

Counterclaim can support a claim, they are to be taken as true, "in a light most favorable to the Moving Defendants." (Decl. in Reply ¶ 3; Docket Entry No. 72).

Defendants reiterate that while, according to their proposed Amended Counterclaim, they did not directly pay for the TWMC, trading away an asset of an equivalent value is akin to payment, and therefore they "suffer[ed] damages and do have standing to [counter]sue." (*Id.*) In response to Plaintiff's request that Defendants' counterclaim damages be reduced, Defendants argue that the value they traded to Rasmussen for the TWMC was equivalent to $240,000.00 and that the portion of the invoices paid for the TWMC to EFNY is an improper metric by which to measure their damages. (*Id.* ¶ 5).

Defendants deny that their motion to amend was submitted in bad faith or after undue delay. (*Id.* ¶¶ 7-9). As to the charge of bad faith, Defendants say the purpose of their motion was to cure what they saw as Plaintiff's contention in their motion to dismiss: a lack of standing for lack of payment. (*Id.* ¶ 8). Defendants argue that there is no undue delay on their part because no initial discovery conference has yet occurred and the time between Plaintiff's filing of the motion to dismiss and Defendants' filing of their motion to amend was the necessary span for Defendants to compose and submit their proposed Amended Counterclaim. (*Id.* ¶ 9).

Defendants object to Plaintiff's request to either deny the motion to amend without prejudice or suspend the decision until after first deciding Plaintiff's motion to dismiss. (*Id.* ¶¶ 12-14). Defendants aver that this would create greater undue delay and result in imbalanced and unfair treatment of the parties, as Plaintiff would be permitted to submit for the Court's consideration "supplemental facts" but deny Defendants an opportunity to respond. (*Id.* ¶ 12).

Lastly, Defendants highlight Plaintiff's lack of opposition to their motion to file a Third-Party Complaint against P&G. (*Id.* ¶ 15).

## III. ANALYSIS

### A. Standard of Review

Pursuant to Fed. R. Civ. P. 15(a)(2), leave to amend pleadings is generally granted freely. *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Nevertheless, the Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Foman*, 371 U.S. at 182; *see Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2002). However, where there is an absence of undue delay, bad faith, prejudice or futility, a motion for leave to amend a pleading should be liberally granted. *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004). In deciding whether to grant leave to amend, "prejudice to the non-moving party is the touchstone for the denial of the amendment." *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) (quoting *Cornell & Co., Inc. v. Occupational Health and Safety Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)).

An amendment is futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imp., Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990) (internal quotation marks and citations omitted). "[F]utility is implicated when the amendment fails to cure a deficiency in the original complaint or fails to state a claim on which relief can be granted." *K.K-M v. New Jersey Dep't of Educ.*, No. CV1711579RBKKMW, 2020 WL 6817506, at *7 (D.N.J. Nov. 20, 2020) (citing *Jablonski v. Pan American World Airways*, Inc., 863 F.2d 289, 292 (3rd Cir.1988)). "In assessing 'futility,' the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *In re Burlington Coat Factory Sec.*

*Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (citing *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)).

To determine if a complaint would survive a motion to dismiss under Rule 12(b)(6), the Court must accept as true all the facts alleged in the pleading, draw all reasonable inferences in favor of the plaintiff, and determine if "under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). "[D]ismissal is appropriate only if, accepting all of the facts alleged in the [pleading] as true, the p[arty] has failed to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Duran v. Equifirst Corp.*, Civil Action No. 2:09-cv-03856, 2010 WL 918444, *2 (D.N.J. March 12, 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Put simply, the alleged facts must be sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The focus is not on "'whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Bell Atl. Corp.*, 550 U.S. at 563 n.8 (quoting *Scheuer v. Rhoades*, 416 U.S. 232, 236 (1974)). Importantly, unless a proposed amendment is "clearly futile . . . denial of leave to amend is improper." *Morton Intern., Inc. v. A. E. Staley Mfg. Co.*, 106 F.Supp.2d 737, 745 (D.N.J. 2000). Further, in assessing a motion to dismiss, while the Court must view the factual allegations contained in the pleading at issue as true, the Court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).

## B. Discussion

Plaintiff opposes Defendants' motion to the extent Defendants, therein, seek leave to amend their Counterclaim.[2] Plaintiff's main argument in opposition to Defendant's request for leave to amend is that Defendants' proposed amendments would be futile. Defendants additionally argue that even if the amendments are not futile, Defendants' request to amend should be denied based on undue delay and bad faith. The Court addresses the latter arguments first and then turns to futility.

With respect to delay, Plaintiff notes that Defendants "reviewed their records and purportedly produced responsive 'documents available to the [Defendants][,]'" which purportedly support their request to amend "in April 2023[,]" yet Defendants waited to seek leave to amend their Counterclaim until November 21, 2023, 7 months after the documents were produced and 5 months after Plaintiff initially moved to dismiss Defendants' original Counterclaim. (Pl. Opp. at 7 (quoting Docket Entry No. 33)). While Plaintiff "concedes that 'delay alone is an insufficient ground to deny leave to amend,'" Plaintiff argues that the delay here when "coupled with the futility of the amendment and [Defendants'] bad faith," provides "ample reason to deny leave to amend." (Pl. Opp. Br. at 7 (quoting *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001)).

---

[2] No opposition has been raised with respect to Defendants' request for leave to file a Third-Party Complaint against P&G. (*See* Pl. Opp. Br. at 8, n.20. Under Rule 14(a)(1), when a Third-Party Complaint isn't filed within 14 days after a defendant's service of its original answer, the decision of whether to grant leave to file a Third-Party Complaint rests within the sound discretion of the Court with the Court generally considering, "(1) the timeliness of the motion; (2) the probability of trial delay; (3) the potential for complication of issues at trial; and (4) prejudice to the original plaintiff." *Hitachi Capital Am. Corp. v. Nussbaum Sales Corp.*, Civil Action No. 09-731 (SDW), 2010 WL 1379804, at *5 (D.N.J. Mar. 30, 2010). Under the circumstances presented, after considering said factors, the Court exercises its discretion to permit the filing of a Third-Party Complaint against P&G.

The Court disagrees with Plaintiff's conclusion. Here, Defendants' delay does not provide a sufficient basis for denying their request to amend, even when considered in conjunction with Defendants' alleged bad faith and Plaintiff's futility argument. Indeed, delay only supports the denial of a request to amend when it has become "'undue,' placing an unwarranted burden on the court, or . . . 'prejudicial,' placing an unfair burden on the opposing party[.]" *Adams v. Gould Inc.,* 739 F.2d 858, 868 (3d Cir. 1984). The Court has yet to conduct a Rule 16 conference in this matter. No schedule has been set governing the timing of discovery, nor has any deadline been set for motions to amend the pleadings. While Defendants likely could have moved to amend sooner, their delay has not placed an unwarranted burden on the Court, nor has it imposed an unfair burden on Plaintiff.

Plaintiff also contends that Defendants' request to amend should be denied in light of Defendants' bad faith, which Plaintiff argues is evidenced by the fact that Defendants' request to amend is "based specifically on allegations – the purchase and assignment of rights from Rasmussen Books Corp. through its president Ari Cameo – that contradict sworn testimony and defy this Court's order that 'Defendants must identify an entity involved in the [sale of the TWMC].'" (Pl. Opp. at 8 (quoting Docket Entry No. 42). Plaintiff argues that "such gamesmanship" should not be countenanced. (*Id.*)

However, "[i]n considering whether a party seeks to amend in bad faith, the Court does not consider whether the original complaint was filed in bad faith or whether conduct outside the motion to amend amounts to bad faith. Rather, the question of bad faith focuses on a party's motives for not amending its pleadings sooner." *Abadi v. Quick Chek Corp.*, Civil Action No. 21-20272 (MAS) (RLS), 2023 WL 3983879, at *3 (D.N.J. June 13, 2023) (citations omitted). The Court has already determined that Defendants' delay in moving to amend is not undue. While

Plaintiff undoubtedly will use the inconsistencies and contradictions noted above later in this litigation, the Court finds that, in the context of Defendants' request to amend, said inconsistencies and contradictions do not represent the type of gamesmanship that embodies bad faith.

Finally, Plaintiff argues that Defendants' proposed amendments are futile. In this regard, Plaintiff notes that Defendants' proposed amendments "simply assert[] factual allegations in an attempt to cure the standing issues Nehemiah identified" and do "not in any manner impact the arguments raised in" Plaintiff's motion to dismiss Defendants' original Counterclaim. (Pl. Opp. at 6). In other words, the substance of the counterclaims has remained unchanged, as has Plaintiff's argument that Defendants' Counterclaim is barred by the ELD. Indeed, Plaintiff specifically claims that "[b]ecause the arguments raised in the Motion to Dismiss apply equally to the amended allegations, the proposed amendment would be futile." (Pl. Opp. at 6).

Given the crux of Plaintiff's opposition, the Court follows the approach taken in *Colombo v. Bd. of Educ. for the Clifton Sch. Dist.*, Civil Action No. 11-0785 (CCC), 2016 WL 6403081, at *2 (D.N.J. Oct. 27, 2016). As stated in *Colombo*:

> Based on the nature of the futility analysis, Defendants' arguments in opposition to the motion to amend would overlap significantly with the arguments made in support of a motion to dismiss. The Court, in its discretion, will not consider these arguments in connection with its review of the motion for leave to amend. In the interests of judicial economy and in the absence of undue prejudice, the Court may decline to engage in a detailed futility analysis where the Court finds that these arguments are better suited for consideration in the context of a motion to dismiss.

*Id.* (citations omitted). Accordingly, given the lack of undue delay and bad faith, Defendants' motion seeking leave to amend their Counterclaim is GRANTED.[3]

---

[3] The Court finds that it is premature to address the parties' arguments concerning damages at this juncture. As such, the Court shall not place limits on Defendants' alleged damages now.

13

Plaintiff is "advised, however, that [it] may renew [its] motion[] to dismiss following the filing of [Defendants'] Amended [Counterclaim], and may rely on the arguments set forth in their previous motion to dismiss" if Plaintiff so chooses. *Id.*; *see also* Text Order of 12/7/2023 (stating that "[t]he administrative termination [of Plaintiff's Motion to Dismiss] is without prejudice to Plaintiff's right to renew its dismissal arguments in a subsequent Motion to Dismiss.")

### III. Conclusion

For the reasons set forth above, Defendants' motion seeking leave to both amend their Counterclaim against Plaintiff and file a Third-Party Complaint against P&G is GRANTED. An appropriate Order follows.

Dated: June 28, 2024

                        s/ Tonianne J. Bongiovanni
                        **HONORABLE TONIANNE J. BONGIOVANNI**
                        **UNITED STATES MAGISTRATE JUDGE**